# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STEPHEN DANIEL NELSON, | ) | 3:23-cv-878 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HANNAH SULLIVAN, *et al*., | ) | |
| *Defendants*. | ) | August 29, 2025 |

## RULING AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Sarala V. Nagala, United States District Judge.

In this civil rights action, Plaintiff Stephen Daniel Nelson, a sentenced inmate in the custody of Connecticut Department of Correction ("DOC"), alleges that Defendants Physician Assistant ("PA") Hannah Sullivan, Osborn Correctional Institution Warden Jesus Guadarrama, and DOC Commissioner Angel Quiros violated his Eighth Amendment rights when they denied his requests for surgery to remove a bullet lodged in his right arm from a dated gunshot wound and a bottom bunk pass. Plaintiff also seeks damages against PA Sullivan under a state law claim for recklessness.

Defendants have moved for summary judgment, arguing that they were not deliberately indifferent to Plaintiff's medical needs; that they are entitled to qualified immunity; and, finally, that Plaintiff failed to exhaust his administrative remedies. Because Plaintiff's Eighth Amendment claims and recklessness claim against PA Sullivan lack merit, Defendants' motion for summary judgment is GRANTED.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

The following factual background reflects the Court's review of the Complaint, ECF No.1; Defendants' Local Rule ("L.R.") 56(a)1 Statement, ECF No. 67-2; Plaintiff's L.R. 56(a)2 Statement, ECF No. 72-1; Plaintiff's Statement of Additional Material Facts, ECF No. 72-1 ("Pl.'s Add'l Facts"); and all supporting materials.

In or around 2003, prior to his incarceration, Plaintiff suffered a gunshot wound to his upper right arm, with the bullet remaining in his arm.    Compl., ECF No. 1, ¶ 8; Pl.'s Add'l Facts ¶ 1.    In July of 2022, while housed at Cheshire Correctional Institution ("Cheshire CI"), Plaintiff began to experience "numbness and pain in his right arm" when performing certain movements, leading him to seek medical treatment.    Pl.'s L.R. 56(a)2 St. ¶ 12.    Plaintiff worked as a barber in the prison, performing eight to thirteen haircuts daily, with minimal days off.    *Id.* ¶ 8.    After approximately the tenth haircut of a given day, Plaintiff would experience pain—the severity and frequency of which is disputed—due to the weight of the clipper shears.    *Id.* ¶ 10.[2]    Defendants contend Plaintiff's pain is of an aching nature "on a 6/10 scale."    Defs.' L.R. 56(a)1 St. ¶ 12. Plaintiff contends, on the other hand, that his pain is up to a level eight or nine out of ten and occurs most of the time when cutting hair after about ten haircuts.    Pl.'s Add'l Facts ¶ 2.

Plaintiff was initially seen by Dr. Richard Williams at Cheshire CI.    *See* Pl.'s L.R. 56(a)2 St. ¶ 13.    On July 7, 2022, Dr. Williams evaluated Plaintiff's arm, prescribed a 5% lidocaine external ointment for pain, and ordered x-rays of Plaintiff's right humerus and elbow.    *Id.*    On July 18, 2022, Dr. Williams notified Plaintiff that the results of the x-ray showed the bullet was

---

[1] Generally, the Court cites only to the relevant paragraph in Plaintiff's L.R. 56(a)2 Statement where a fact is undisputed.    The facts are undisputed unless otherwise noted.
[2] Plaintiff also testified that he experiences the pain "[e]very morning" when he wakes up.    Pl.'s Dep. Tr., Pl.'s Opp., Ex. 1, ECF No. 72-2 at 39.

close to his elbow, but "self-contained," and referred Plaintiff to a surgeon at University of Connecticut Health Center ("UConn Health"). *Id.* ¶¶ 14–15. On October 13, 2022, Plaintiff was transferred to Osborn Correctional Institution ("Osborn CI") and was no longer under the care of Dr. Williams. *Id.* ¶ 17.

On March 14, 2023, Plaintiff saw Dr. Yu Liang, general surgeon at UConn Health. *Id.* ¶ 18; Pl.'s Add'l Facts, ¶ 8. Plaintiff states Dr. Liang wanted Plaintiff to undergo a CT scan and then follow up with her further. Pl.'s Add'l Facts ¶¶ 12, 13. Two days later, Plaintiff was seen at sick call, where the nurse gave him acetaminophen for the pain. Pl.'s L.R. 56(a)2 St. ¶ 19; Compl., Ex. 8, ECF No. 1-9 at 5; Defs.' Mot. for Summ. Judg., Ex. K, ECF No. 68 at 61.[3]

On March 21, 2023, Defendant PA Sullivan and Dr. Frank Maletz, a licensed orthopedic surgeon and consultant with DOC who provides non-operating orthopedic care to inmates at Osborn CI, met to discuss Plaintiff's medical history, follow-up care, and surgery recommendations. Pl.'s L.R. 56(a)2 St. ¶ 20, 22–23. Dr. Maletz determined that removal of the bullet was an elective surgery that would benefit from waiting until Plaintiff was out of DOC custody, in order to minimize the risk of post-operating infection—which, in his opinion, outweighed the benefits of immediate elective surgery. *Id.* ¶ 27. Dr. Maletz thus decided not to order the CT scan requested by Dr. Liang and not to allow Plaintiff to proceed with the bullet removal surgery. Pl.'s Add'l Facts, ¶ 17. PA Sullivan agreed with Dr. Maletz's assessment.

---

[3] Under Local Rule 56(a)3, the parties must "cite to specific pages when citing to . . . documents longer than a single page in length." In their L.R. 56(a)1 statement, however, Defendants routinely cite to full exhibits consisting of many pages, without identifying specific pages of relevance. For instance, in support of paragraph 19, they simply cite "Ex. K" without reference to any specific pages of that Exhibit, despite that Exhibit K is more than 190 pages in length. *See* Defs.' L.R. 56(a)1 St., ¶ 19. By proceeding in this manner, Defendants have violated the Local Rules and wasted judicial resources. In the interests of justice, however, the Court has reviewed the entirety of each Exhibit presented by the parties.

*Id.* ¶ 18.    PA Sullivan informed Plaintiff of this decision on March 23, 2023.    Pl.'s L.R. 56(a)2 St. ¶ 27.

Plaintiff began the administrative remedy process on March 21, 2023.    Pl.'s Add'l Facts, ¶ 23.    That day, Plaintiff submitted his first Health Services Administrative Remedy ("HSAR") Level 1 request pursuant to Department of Correction Administrative Directive ("A.D.") 8.9, alleging that he had been subjected to cruel and unusual punishment for the delay in getting surgery to remove the bullet from his arm, and seeking relief in the form of surgery and disciplinary action for the relevant individuals responsible for the delay.    *See* ECF No. 1-9 at 5.    The HSAR was rejected on March 23, 2023, with the following explanation:    "Your CN8901 was reviewed – your informal resolutions (CN9601) do not address your requested resolutions.    You state on July 8, 2023 you were seen for an xray.    That date is in the future.    Also inmates cannot dictate staff discipline."    *Id.* at 6.    The HSAR was marked as "not subject to further appeal."    *Id.*

On April 26, 2023, Plaintiff submitted a second HSAR challenging the determination that his surgery was elective and requesting the surgery be performed.    Pl.'s Add'l Facts ¶ 27; Pl.'s Opp., Ex. 4, ECF No. 72-4 at 11.    This request was denied on May 5, 2023, with the notation "Per your provider PA Sullivan – no changes at this time.    This was reviewed with our orthopedic specialist," and marked as not subject to further appeal.    Pl.'s Add'l Facts ¶ 28; ECF No. 72-4 at 10.

Then, Plaintiff submitted two duplicate HSARs on May 26, 2023, requesting a bottom bunk pass in response to a May 20, 2023, decision to assign Plaintiff to a top bunk.[4]    Pl.'s Add'l Facts,

---

[4] Plaintiff contends that the May 26, 2023, HSAR was submitted pursuant to DOC Administrative Directive 9.6. Pl.'s Add'l Facts, ¶ 29.    In that HSAR, Plaintiff checked the box for an "administrative" remedy, rather than the box for "diagnosis/treatment."    ECF No. 72-4 at 14.

¶¶ 29–30.   In these duplicate HSARs, Plaintiff also renewed his request for surgery to remove the

bullet.   ECF No. 72-4 at 14–18, 24–26.   The first of these HSARs, received on June 1, 2023, was

rejected with the following explanation, and designated as not subject to further appeal:

> Mr. Nelson, administrative remedies are for a practice policy and procedure
> issue [or] an allegation of staff misconduct.   You do not have a current or
> previous order for a Bottom Bunk so your provider would have to make this
> decision.   After reviewing this with your provider you do not meet the
> criteria for a bottom Bunk and your surgical consult was reviewed with the
> on-site orthopedic provider and your surgery is considered elective and can
> be done when out of DOC custody.   Please feel free to follow the proper
> protocol to see your provider to address a bottom Bunk pass further.
> Requesting surgery or a bottom bunk would be a diagnosis/treatment
> remedy, NOT administrative."

*Id*. at 15.   The second of these HSARs, marked as received on June 14, 2023, is blank in the

"disposition" section, but was effectively rejected, without further appeal, with the following

language:   "Mr. Nelson – this is a duplicate remedy and a response was sent to your original.   Per

A.D. 8.9 we have 30 days to respond to an administrative remedy.   The response was within that

time frame."   *Id.* at 25.

On June 9, 2023, Plaintiff presented to the medical unit on a sick call, requesting a bottom

bunk pass given the injury to his right arm.   Pl.'s L.R. 56(a)2 St. ¶ 31.   Plaintiff arrived without

the assistance of any staff or a wheelchair, and was examined by Defendant PA Sullivan and Nurse

Bowen; during the examination, Plaintiff had no acute distress and had a full range of motion for

all four of his limbs, without obvious weakness or atrophy.   *Id.* ¶¶ 32–33.   During the visit,

Plaintiff complained of pain in his upper right arm radiating to his elbow, for which he had been

prescribed a 5% lidocaine external ointment since July of 2022.   *Id.* ¶ 34.   Plaintiff did not request

additional medication at this meeting.   *Id.* ¶ 36.   After a review of the UConn Health bottom bunk

pass guidelines as adopted by DOC, PA Sullivan determined that Plaintiff did not meet the criteria and denied his request.  *Id.* ¶ 35; Sullivan Decl., Defs.' Mot., Ex. A, ECF No. 67-3 ¶ 11.

Plaintiff commenced this action *pro se* on June 29, 2023.   Compl., ECF No. 1.   On initial review, the Court permitted Plaintiff to pursue his claim of deliberate indifference for damages against PA Sullivan, his claim of deliberate indifference for injunctive relief against all three Defendants, and his state law claim of recklessness as against PA Sullivan, but dismissed the other claims.   Initial Review Order, ECF No. 20.   The Court later ordered *pro bono* counsel appointed for Plaintiff.   ECF No. 22.

Following the discovery period, Defendants moved for summary judgment, arguing: (1) Plaintiff cannot prevail on the merits of his Eighth Amendment claims, nor is he entitled to injunctive relief; (2) Defendants are entitled to qualified immunity because their actions were reasonable and did not violate clearly established law; and (3) Plaintiff failed to exhaust his administrative remedies as to each of his claims before bringing this action as required under the Prison Litigation Reform Act ("PLRA").   ECF No. 67.   Plaintiff opposes Defendants' motion. ECF No. 72.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   A disputed fact is material only where the determination of the fact might affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   With respect to genuineness, "summary judgment will

not lie if the dispute about a material fact is . . . such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing there is no genuine issue of material fact in dispute will be satisfied if the movant can point to an absence of evidence to support an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears an initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. A movant, however, "need not prove a negative when it moves for summary judgment on an issue that the [non-movant] must prove at trial. It need only point to an absence of proof on [the non-movant's] part, and, at that point, [the non-movant] must 'designate specific facts showing that there is a genuine issue for trial.'" *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 324). The non-moving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his or her favor. *Anderson*, 477 U.S. at 249. If the non-movant fails "to make a sufficient showing on an essential element of [their] case with respect to which [they have] the burden of proof," then the movant will be entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir.

2021) (citation and internal quotation marks omitted).   "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

## III.   DELIBERATE INDIFFERENCE[5]

The Court first analyzes Plaintiff's Eighth Amendment deliberate indifference claims and holds that there is no genuine dispute of fact concerning whether Defendants violated Plaintiff's Eighth Amendment rights:   they did not.   The Court therefore grants summary judgment in favor of Defendants on Plaintiff's deliberate indifference claims, for both monetary damages and injunctive relief.[6]

### A.   Legal Standard

"The Eighth Amendment prohibits the infliction of 'cruel and unusual punishments.'" *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (quoting U.S. Const. amend. VIII).   "Under the Eighth Amendment, States must not deprive prisoners of their 'basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety.'"   *Phelps v. Kapnolas*, 308 F.3d 180, 185

---

[5] As a general point, the Court addresses Plaintiff's argument that "this Court's Initial Review Order (ECF #20) is relevant to establishing that genuine issues of material fact exist."   ECF No. 72 at 8.   Not so.   This Court's Initial Review Order stated specifically that its conclusions were "[f]or the purposes of initial review."   ECF No. 20.   While the Court is cognizant of its Initial Review Order, it is by no means bound by it in determining whether genuine issues of material fact exist for the purpose of ruling on a motion for summary judgment.

[6] Because Plaintiff has not presented a meritorious Eighth Amendment deliberate indifference claim against any Defendant, the Court does not reach Defendants' argument regarding failure to exhaust administrative remedies.   But the Court notes that Defendants have arguably conceded that Plaintiff exhausted available remedies with respect to his request for bullet removal surgery.   *See* ECF No. 67-1 at 35 ("Although, Plaintiff filed a health service review regarding his desire for a bullet removal surgery that was denied, he never properly filed a health service review regarding the issuance [of] a bottom bunk pass as required by A.D. 8.9.").   Even if that is not a concession, Plaintiff's administrative remedies on this issue were marked as not subject to further appeal, so there is at least a question of fact as to whether he properly exhausted them.   Additionally, there appears to be a dispute of material fact regarding whether Plaintiff properly exhausted his administrative remedies as to his request for a bottom bunk pass.   Viewing the facts in the light most favorable to Plaintiff, Plaintiff's May 26, 2023, HSARs gave Defendants notice "about the factual basis of his claims," *Edwards v. Melendez*, 832 F. App'x 50, 54 (2d Cir. 2020), and thus served the purpose of the exhaustion requirement.   Given that each of these HSARs was rejected (or effectively rejected) and returned with a notation that they were not subject to further appeal, a reasonable jury could conclude that Plaintiff did exhaust administrative remedies with respect to his request for a bottom bunk pass.

(2d Cir. 2002) (per curiam) (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)).   "Although the Constitution does not require 'comfortable' prison conditions, the conditions of confinement may not 'involve the wanton and unnecessary infliction of pain.'"   *Walker*, 717 F.3d at 125 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 (1981)).   To sufficiently state a claim for inadequate medical care, Plaintiff must present evidence "showing the offending official's 'deliberate indifference to [his] serious medical needs.'"   *Thomas v. Wolf*, 832 F. App'x 90, 92 (2d Cir. 2020) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)).   The standard of deliberate indifference to inmate health or safety includes both subjective and objective components.   *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

     *1.  Objective Prong*

     The first component is objective, requiring the prisoner to demonstrate that the alleged deprivation of medical care was "'sufficiently serious.'"   *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter,* 501 U.S. 294, 298 (1991)).   The prisoner must "show that he was 'actually deprived of adequate medical care' by an official's failure 'to take reasonable measures in response to a [sufficiently serious] medical condition.'"   *Thomas*, 832 F. App'x at 92 (brackets in original) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006), *abrogated on other grounds as recognized by Kravitz v. Purcell*, 87 F.4th 111, 119, 122 (2d Cir. 2023)).

     This objective showing in turn requires a court to make two inquiries.   First, the Court must determine whether the inmate was "actually deprived of adequate medical care."   *Salahuddin*, 467 F.3d at 279.   Second, the Court must determine "whether the inadequacy in medical care is sufficiently serious," requiring an examination of "how the offending conduct is inadequate and what harm, if any, the inadequacy has or will likely cause the prisoner."   *Id.* at

280. This examination differs based on whether the issue is failure to provide *any* medical treatment, inadequate treatment, or delayed treatment. *See Smith v. Carpenter*, 316 F.3d 178, 185–86 (2d Cir. 2003). This inquiry is necessarily contextual and fact-specific. *Id.* at 185.

First, "if the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." *Salahuddin*, 467 F.3d at 280 (citing *Smith*, 316 F.3d at 185–86). In deciding whether a condition is sufficiently serious, courts consider whether "'a reasonable doctor or patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'" *Id.* (citing *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted)).

In cases where treatment is given but the inmate alleges it is inadequate, "the seriousness inquiry is narrower." *Id.* The Court focuses on the "inadequacy itself." *Valdiviezo v. Boyer*, 752 F. App'x 29, 32 (2d Cir. 2018) (summary order); *see also Robbs v. McCrystal*, No. 3:20-CV-01584 (MEG), 2023 WL 2526533, at *9 (D. Conn. Mar. 15, 2023) ("[i]f the prisoner is receiving treatment and the conduct at issue is . . . a challenge to the kind of treatment received, the seriousness inquiry focuses on the challenged . . . treatment 'rather than the prisoner's underlying medical condition alone'") (quoting *Smith*, 316 F.3d at 185).

Finally, "[w]hen the basis for a prisoner's Eight Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* . . . rather than the prisoner's *underlying medical condition* alone" to determine whether the deprivation is objectively sufficiently serious. *Smith*, 316 F.3d at 185 (emphasis in original).

2. *Subjective Prong*

With respect to the subjective component, "[a]n official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety,'" which is "a state of mind 'equivalent to the familiar standard of recklessness' as used in criminal law." *Smith*, 316 F.3d at 184 (*quoting* Chance, 143 F.3d at 702, and then *Phelps*, 308 F.3d at 186). Conduct may rise to the level of deliberate indifference when the prison official's act or failure to act "evinces 'a conscious disregard of a substantial risk of serious harm.'" *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (quoting *Farmer*, 511 U.S. at 839).

Allegations constituting negligence or medical malpractice are insufficient to support an Eighth Amendment deliberate indifference claim. *Thomas*, 832 F. App'x at 92 (citing *Hathaway*, 99 F.3d at 553). "A plaintiff cannot establish a claim of deliberate indifference on a theory that the defendant failed to take some available alternative or additional diagnostic techniques or forms of treatment when the defendant's decision is based on sound medical judgment." *Clark v. Quiros*, 693 F. Supp. 3d 254, 286 (D. Conn. 2023) (citing *Estelle v. Gamble*, 429 U.S. 97, 107 (1976) ("[a] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice…"). Further, a patient's disagreement over the treatment provided does not rise to the level of deliberate indifference. *See Wright v. Rao*, 622 F. App'x 46, 47 (2d Cir. 2015) (citing *Chance*, 143 F.3d at 703).

B. Discussion

1. *Objective Prong*

The Court concludes that there are genuine disputes of material fact with respect to whether

Plaintiff has established the objective component of a deliberate indifference claim.

No party disputes the injury that Plaintiff has suffered:   a gunshot wound to the right arm that has resulted in pain "of an aching nature on a 6/10 scale," at the very least.   Defs.' L.R. 56(a)1 St. ¶ 12.   Further, no party disputes the fact that Plaintiff has been receiving a topical 5% lidocaine ointment prescription for treatment of his injury since July 7, 2022.   *Id.* ¶ 13.   As such, the proper inquiry does not focus on complete denial of treatment, as Plaintiff was and continues to receive treatment for his pain; rather, the questions at issue are whether that treatment was inadequate and whether the decisions to not afford him surgery and a bottom bunk pass were sufficiently serious to constitute an Eighth Amendment violation.   For the reasons discussed below, there are genuine disputes of material fact that preclude summary judgment on this issue.

Because it is clear Plaintiff received *some* treatment in the form of topical lidocaine, the Court's inquiry focuses on whether this treatment was inadequate and whether he was harmed by the delay in obtaining what he believes is adequate treatment (surgery).   The Court examines the nature of Plaintiff's injury, but also the nature of the treatment and the effect of the delay.   *Smith*, 316 F.3d at 185–86.   As to the first consideration, it is clear that Plaintiff's injury is medically noteworthy.   Plaintiff has had lodged in his right arm a bullet that lies a couple of inches above his elbow.   *See* Pl.'s L.R. 56(a)2 St. ¶ 14.   The presence of ammunition in a patient's arm, coupled with reports of daily chronic pain as a result of the lodged ammunition, *see* ECF No. 72-2 at 39, is certainly a condition a reasonable doctor would find noteworthy and would want to monitor for pain and changes over time.

The question of whether and how the injury affects Plaintiff's daily activity is more difficult.   Plaintiff works as a prison barber most days of the week, performing eight to thirteen

haircuts daily, and with shifts lasting from approximately 9:00 am to 2:45 p.m. *See* Pl.'s L.R. 56(a)1 St. ¶¶ 8–9. Plaintiff testified that after a certain number of haircuts in a given day, the haircuts will progressively "take pretty long to finish," to the point where Plaintiff requests that others take over the rest of his scheduled haircuts for the day. *See* ECF No. 72-2 at 42. Plaintiff does not "decline" any haircuts, however. *Id.* Defendants have also put forward evidence that when Plaintiff appeared for his sick call visit on June 9, 2023, he "arrived in the medical unit without assistance of staff or a wheelchair," and appeared "well nourished, well developed, alert, oriented to time, and in no acute distress." Pl.'s L.R. 56(a)2 St. ¶¶ 32–33. Further, at the sick call visit, Plaintiff did not request any additional medication for pain management. *Id.* ¶ 36. Given these differences in testimony, there exist disputes of fact about the effect of the allegedly inadequate lidocaine treatment and delay in surgery on Plaintiff's daily activities.

Additionally, Dr. Maletz stated that Plaintiff's pain is "chronic," *see* Maletz Dep. Tr., Ex.7, Pl.'s Opp., ECF No. 72-7 at 63, but the record contains conflicting evidence about the severity of the pain. Plaintiff and Defendants have both cited to evidence that sets a general range of Plaintiff's pain between 6/10 and 9/10. *See* Decl. of Richard Williams, MD, Defs.' Mot., Ex. C, ECF No. 67-6 ¶ 8; Pl's Add'l Facts, ¶ 2. Further, Plaintiff testified that this pain has only gotten worse over time or, in other words, is degenerative. *See* ECF No. 67-17 at 41. Dr. Maletz confirmed in his deposition that it was "[a]bsolutely" possible that a bullet left in someone's body could be an injury that is degenerative and gets worse over time. ECF No. 72-7 at 34. However, as discussed above, when he reported for his June 9, 2023, sick call, Plaintiff appeared well and did not show signs of acute distress. Pl.'s L.R. 56(a)2 St. ¶¶ 32–33. At the sick call, Plaintiff demonstrated a full range of motion, and did not request any additional medication to manage his

pain—only the issuance of a bottom bunk pass. *Id.* Further, Dr. Maletz also testified that the bullet in Plaintiff's arm is "heavily encased in scar tissue" and thus it was not "actively creating a process of inflammation and repair." ECF No. 72-7 at 106. As such, there is a sufficiently open question as to the extent to which Plaintiff's injury is degenerating over time, and necessitates more aggressive treatment.

Finally, there are sufficient questions about the effectiveness of lidocaine for Plaintiff's injury. Plaintiff contends that lidocaine is a "local anesthetic that prevents pain by blocking the signals at the nerve endings in the skin." ECF No. 72 at 8. Given that Dr. Maletz stated in his deposition that Plaintiff's bullet was "heavily encased in scar tissue," there is an open question as to whether a topical nerve agent would be sufficient to dull pain radiating from an internal wound encased in scar tissue. ECF No. 72-7 at 106. On the other hand, when presented with the opportunity to request additional pain medication or change the dosage because the topical lidocaine was insufficient, Plaintiff declined to request any additional medication or alternative treatment plan. *See* ECF No. 67-3 ¶ 12. As such, there also exists a question as to the sufficiency of the treatment Plaintiff received, in addition to the severity of his injury and the harm caused by postponement of removal surgery.

Because there exists conflicting testimony on the severity and chronicity of Plaintiff's pain, the effectiveness of the treatment provided, and the degree to which the injury impacts his daily activity, there is a genuine dispute of material fact with respect to the objective prong of Plaintiff's deliberate indifference claim.

### 2. *Subjective Prong*

Nonetheless, the Court finds there is an absence of triable materials facts on the subjective

prong as to all Defendants.   As Plaintiff is required to show genuine disputes of material fact as to both the objective and subjective prongs of his deliberate indifference claim to survive Defendants' motion for summary judgment and has not done so, the Court grants Defendants' motion as to all remaining Eighth Amendment deliberate indifference claims.

a.   PA Sullivan

First, based on the record before the Court, PA Sullivan's actions in declining to pursue the removal surgery and declining to award Plaintiff a bottom bunk pass do not rise to the level of reckless disregard required to satisfy the subjective prong of a deliberate indifference claim.   *See Smith*, 316 F.3d at 184.

To start, PA Sullivan did not recklessly disregard Plaintiff's request for removal surgery. In March of 2023, PA Sullivan diligently reviewed Plaintiff's medical history and specifically sought out a consultation with DOC's in-house orthopedic surgeon, Dr. Maletz, in order to properly evaluate Plaintiff's need for removal surgery.   ECF No. 67-3 ¶ 13.   Dr. Maletz explained that the surgery is elective and poses risk of infection, and could be done once Plaintiff was no longer in DOC custody.   *Id.* ¶ 14.   PA Sullivan stated that following the meeting with Dr. Maletz, she was in full agreement with his assessment, and did not have any differing opinion.   ECF No. 72-3 at 58; *see also id.* at 77 (recognizing that a person's body can do "a pretty good job of -- of encapsulating, and kind of walling [the bullet] off," and that "sometimes [it] could be more harmful to take it out than to leave in").[7]

While Plaintiff characterizes PA Sullivan's actions as an "outright refus[al] to proceed with

---

[7] Plaintiff argues that PA Sullivan testified that she had the authority to challenge Dr. Maletz's medical opinion. ECF No. 72 at 14.   Even if she had the authority to challenge his opinion, she testified she agreed with the opinion, ECF No. 72-3 at 58, and for the reasons explained in this ruling, her actions do not rise to the level of recklessness.

the diagnostic tests that had been requested by Dr. Liang," ECF No. 72 at 14, a defendant's failure to pursue an alternative avenue of care when the decision was based on their medical judgment does not rise to the requisite recklessness state of mind—especially when the path selected was based on sound medical reasoning.  *See Clark*, 693 F. Supp. at 286.[8]  PA Sullivan's decision did differ from Dr. Liang's recommendations; however, her decision was founded on Dr. Maletz's calculated decision weighing Plaintiff's current pain and mobility levels against the risk of infection and other complications should the surgery be performed while Plaintiff was in custody, which PA Sullivan agreed with in her own professional opinion.  *See* ECF No. 67-3 ¶ 14; ECF No. 72-3 at 58.  Although perhaps it would have been best practice for PA Sullivan (and Dr. Maletz) to meet with Plaintiff ahead of any meeting to consider surgery, that decision still does not amount to recklessness, especially given the otherwise diligent preparation and consultation PA Sullivan undertook ahead of the meeting and that the conclusion was based on Dr. Maletz's and PA Sullivan's medical judgment.  At most, it could be characterized as negligence, which does not qualify as deliberate indifference.  *See Thomas*, 832 F. App'x at 92 (citing *Hathaway*, 99 F.3d at 553).  That Plaintiff disagreed with this conclusion does not mean PA Sullivan acted with deliberate indifference.  *See Wright*, 622 F. App'x at 47.

Plaintiff's presentation at the sick call visit on June 9, 2023, further supports the conclusion that PA Sullivan was not reckless.  At that visit, although Plaintiff complained of pain in his right arm, he did not present with any acute distress, had a full range of motion without obvious

---

[8] Plaintiff's briefing attempts to blur the line between outright order and recommendation, relying on terms such as "request" and "needed to have" to describe Dr. Liang's recommendation for a CT scan to be performed.  *See* ECF No. 72 at 14; Pl.'s Add'l Facts ¶ 12.  However, Dr. Liang's own testimony clearly indicates that specialists "don't order the CT Scan," and that all Dr. Liang did was "put in the recommendation."  Liang Decl., Pl.'s Opp., Ex. 6, ECF No. 72-6 at 19.  As such, PA Sullivan's decision not to follow Dr. Liang's recommendation is properly characterized as exactly that—a difference of opinion—not an outright refusal to follow the order of another physician.

weakness, and did not request a change in his medication regimen.  Pl.'s L.R. 56(a)2 St. ¶¶ 32–34, 36.  With such a presentation, PA Sullivan need not have revisited the conclusion she and Dr. Maletz had reached concerning Plaintiff's need for surgery.

Further, PA Sullivan was not reckless in her denial of Plaintiff's request for a bottom bunk pass.  PA Sullivan followed the UConn Health medical guidelines for a bottom bunk pass, as adopted by the DOC.  Under these criteria, orthopedic patients are eligible for a pass when they present with "acute fracture or sprain with documented physical findings," "severe degenerative arthritis documents by ex-ray and exam," "back pain" caused by symptomatic disease documented by diagnostic testing; and "amputees."  ECF No. 67-4 at 2.

PA Sullivan's denial of a bottom bunk pass after Plaintiff's June 9, 2023, visit was in accordance with adopted UConn Health guidelines, and was not reckless.  While Plaintiff described pain in his arm, he did not have a fracture, severe degenerative arthritis, back pain, or an amputation.  Further, Plaintiff could not satisfy any of the other enumerated non-orthopedic grounds for a bottom bunk pass.  *See* ECF No. 67-4 at 2.  Nor has Plaintiff presented any grounds why PA Sullivan should have deviated from the applicable guidelines—and none are apparent from the record, as the uncontroverted account of the sick call was that Plaintiff had full mobility and did not present any acute distress.  Pl.'s L.R. 56(a)2 St. ¶ 33.  While PA Sullivan testified that she is free to, and has in the past, departed from the UConn Health medical guidelines to give an inmate a bottom bunk pass, she was clear that deviation was appropriate only in "really severe" cases, such as "severe autoimmune conditions" or "bleeding disorders."  ECF No. 72-3 at 76.  Plaintiff did not present with any conditions that, in PA Sullivan's view, were severe enough to depart from the guidelines.  Even viewing the facts in the light most favorable to Plaintiff, PA

Sullivan's decision to follow the guidelines cannot be said to be reckless. Again, while Plaintiff may disagree with PA Sullivan's decision, mere disagreement is not sufficient to establish deliberate indifference. *See Wright*, 622 F. App'x at 47 (citing *Chance*, 143 F.3d at 703).

To the extent Plaintiff contends PA Sullivan's statement that she was "pretty certain" ahead of the sick call that she would be denying Plaintiff's bottom bunk pass amounts to evidence of recklessness, this is not so. ECF No. 72 at 14–15. First, by this point, PA Sullivan had reviewed Plaintiff's file and thus was familiar with Plaintiff's medical history. Given this, it is entirely reasonable and permissible for PA Sullivan to have formed an opinion as to whether Plaintiff could satisfy the criteria for a bottom bunk pass ahead of the sick call. And Plaintiff does not dispute that, upon examination, he demonstrated full mobility, did not show any acute distress, and did not request a change to his medication. Thus, nothing at the sick call visit suggests that PA Sullivan recklessly disregarded facts that pointed towards eligibility for a bottom bunk pass.

For these reasons, the Court cannot find there are any material disputes of fact as to the subjective prong of Plaintiff's deliberate indifference claim against PA Sullivan. Because no reasonable jury could find that PA Sullivan acted with deliberate indifference, she is entitled to summary judgment on his Eighth Amendment claim against her.[9]

PA Sullivan is also entitled to summary judgment on Plaintiff's state law recklessness

---

[9] In his opposition brief, Plaintiff cites *Clark* and *Clark v. Quiros*, No. 3:19-CV-575 (VAB), 2024 WL 3552472 (D. Conn. July 26, 2024) ("*Clark* II") as recent and "highly instructive" in-district decisions. *See* ECF No. 72 at 4. While the Court appreciates Plaintiff's review of recent caselaw, the Court finds that those cases are factually distinct from the case at hand. Both *Clark* and *Clark II* concern a plaintiff's deliberate indifference claim related to denial of gender-affirming care while serving a life sentence. There, medical professionals failed to provide *any* care for ten months, despite Plaintiff attempting self-castration in an attempt to conform to her gender identity. *See Clark*, 693 F. Supp. 3d at 290–91. Further, the plaintiff there is serving a life sentence, making the possibility of care outside of DOC facilities impossible. *Id.* at 266. Here, by contrast, contemplation of release was an explicit factor in Dr. Maletz's decision-making process. ECF No. 72-7 at 62–63. There is no indication in the record before the Court that Plaintiff was serving a life sentence.

claim, as she is entitled to state statutory immunity. Connecticut General Statutes § 4-165 provides in relevant part that "[n]o state officer or employee shall be personally liable for damages or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment." Although the Connecticut Supreme Court has not defined the standard for wanton, reckless, or malicious conduct under § 4-165, in the common-law context it has defined the phrase in a manner "not unlike the *mens rea* requirement of a deliberate indifference claim." *See Collins v. Feder*, No. 3:23-cv-71 (KAD), 2024 WL 1658442, at *4–5 (citing *Martin v. Brady*, 261 Conn. 372, 379 (2002) (noting that wanton, reckless, or malicious conduct is "such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action")). Accordingly, because the Court has held above that no reasonable jury could conclude PA Sullivan acted recklessly for purposes of Plaintiff's deliberate indifference claim, it likewise concludes that Connecticut General Statutes § 4-165 bars Plaintiff's state common law claim.

b. Warden Guadarrama and Commissioner Quiros

Next, the Court holds that Plaintiff is not entitled to injunctive relief against either Defendant Warden Guadarrama or Defendant Commissioner Quiros. Because there is no underlying constitutional violation, and thus no ongoing constitutional violation, summary judgment is appropriate as to these Defendants.

The Court allowed Plaintiff to proceed with his claims against the Warden and Commissioner in their official capacities, for injunctive relief only, related to provision of the surgery and a bottom bunk pass. *See* ECF No. 20. District courts within this Circuit have held that a claim for injunctive relief brought against a state official in an official capacity "does not

require personal involvement." *Branch v. Guadarrama*, No. 3:24-CV-536 (MPS), 2024 WL 3342992, at *5 (D. Conn. July 9, 2024); *Lewis v. Cuomo*, No. 20-CV-6316 (CJS), 2021 WL 5827274, at *11 n.9 (W.D.N.Y. Dec. 8, 2021). Thus, the lack of evidence in the record showing that either Warden Guadarrama and Commissioner Quiros was personally involved with the denial of surgery or the bottom bunk pass is not a bar to Plaintiff's claim for injunctive relief against them.

But these Defendants are nonetheless entitled to summary judgment because Plaintiff has not demonstrated genuine disputes of material fact concerning an ongoing constitutional violation. The Eleventh Amendment generally acts as a bar to suit against the states. *See generally* U.S. CONST. amend. XI. However, under the *Ex Parte Young* exception, Plaintiff "may avoid the Eleventh Amendment bar to suit and proceed against individual state officers, as opposed to the state, in their official capacities, provided that his complaint (a) 'alleges an ongoing violation of federal law' and (b) 'seeks relief properly characterized as prospective.'" *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quoting *Verizon Maryland, Inc. v. Public Service Comm'n of Maryland*, 535 U.S. 635, 645 (2002)). "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer*, 511 U.S. at 846-47) (other citations omitted).

For the reasons explained above, PA Sullivan did not act with deliberate indifference in concluding, with Dr. Maletz, that it was prudent for Plaintiff to wait for the bullet removal surgery until after he was released from custody, and in denying Plaintiff a bottom bunk pass. In light of that conclusion that there was no underlying constitutional violation, the Court cannot find that

there is an *ongoing* constitutional violation that entitles Plaintiff to injunctive relief.   Moreover, with respect to Plaintiff's request for a bottom bunk pass, it is undisputed that Plaintiff has been housed in a single cell without a bunk for more than a year.   Pl.'s L.R. 56(a)2 St. ¶ 11.   Thus, to the extent Plaintiff's request for injunctive relief of a bottom bunk pass remains a live issue, the Court likewise concludes that there is no ongoing constitutional violation justifying injunctive relief in the form of an order that Plaintiff be given a bottom bunk pass.    For these reasons, Defendants Warden Guadarrama and Commissioner Quiros are entitled to summary judgment.

In light of its holdings above that Defendants must be granted summary judgment for other reasons, the Court does not reach Defendants' qualified immunity arguments.

## IV.    CONCLUSION

For the reasons discussed herein, Defendants' motion for summary judgment is GRANTED.   The Clerk is instructed to enter judgment for Defendants and close this case.

**SO ORDERED** at Hartford, Connecticut this 29th day of August, 2025.

  */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE